TIMEX V.I., INC., Plaintiff,

v.

UNITED STATES of America, William Daley as Secretary of the United States Department of Commerce, Bruce Babbitt as Secretary of the United States Department of Interior and Frank W. Creel as Director, Statutory Import Programs Staff, Import Administration, United States Department of Commerce, Defendants.

Slip Op. 97–85.
Court No. 96–02–00528.

United States Court of International Trade.

June 30, 1997.

Timex Corporation (Frank T. Judge, III, Middlebury, CT), for plaintiff.

Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, (Velta A. Melnbrencis) and Robert E. Nielsen, Washington, DC, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for defendants.

## MEMORANDUM OPINION

DiCARLO, Senior Judge.

This case involves plaintiff Timex V.I., Inc.'s challenge to a decision issued by the Secretaries of Commerce and of the Interior. (Secretaries' Decision of Jan. 25, 1996, Pub. Doc. 13.) The Secretaries affirmed a decision by the Director of the Statutory Import Programs Staff, Department of Commerce denying Timex a production incentive certificate (PIC) for 1996, because Timex planned to close its watch facility in the Virgin Islands by the end of 1995 and would not be continuing watch assembly in the Virgin Islands in 1996. Timex contends the Secretaries' administrative decision unlawfully denied Timex of its PIC.

## BACKGROUND

Plaintiff Timex V.I., Inc. is a wholly-owned subsidiary of Timex Corporation that began watch assembly operations in the Virgin Islands in 1986. Timex V.I. at various times employed up to 120 people and assembled up to 700,000 watches annually. In response to changing market conditions, however, Timex determined that its Virgin Islands assembly operations were no longer economically viable. In July of 1995, plaintiff informed the Director of Statutory Import Programs Staff, International Trade Administration, Department of Commerce, that its Virgin Islands facility would be closed by the end of 1995. In August 1995, the Director requested a written statement describing Timex's shutdown plans before a decision would be made regarding Timex's eligibility for a PIC in 1996. Timex provided the requested information in a September 7, 1995 letter.

Paragraph (h)(i) of Note 5 of the additional U.S. notes to Chapter 91 of the Harmonized Tariff Schedules of the United States (HTSUS), as amended, provides for the issuance of PICs. It reads:

(i) In the case of each calendar year beginning after December 31, 1982, and before January 1, 2007, the Secretaries, acting jointly, shall—

(A) verify the wages paid by each producer to permanent residents of the insular possessions during the preceding calendar year; and

(B) issue to each producer (not later than March 1 of such year) a certificate for the applicable amount.

HTSUS, § XVIII, ch. 91, Additional Note 5, para. (h)(i) (Supp. I 1995); *see also* Uruguay Round Agreements Act, Pub.L. No. 103–465, § 602(a), 108 Stat. 4809, 4991 (1994). The parties to this litigation have referred to this provision as "Section 110(h)(i)." For the sake of consistency, the court will do the same.

A production incentive certificate provides for a duty refund on the import of dutiable watches from countries other than U.S. insular possessions. HTSUS, § XVIII, ch. 91, Additional Note 5, paras. (h)(i), (h)(v) (Supp. I 1995). The dollar value of each certificate is calculated from the creditable wages and duty-free shipments made by each insular possessions producer during the previous calendar year. Because the watches and watch movements produced in the Virgin Islands already receive duty-free treatment, the certificate is negotiable and may be transferred to another company which has made duty-paid entries into the United States.

In a letter dated September 27, 1995, the Director explained that Timex was not eligible to receive a PIC in 1996, because it was closing operations by the end of 1995. (Letter from Director of SIPS, Pub. Doc. No. 11.) Pursuant to 15 C.F.R. § 303.13(a) (1995), Timex filed an appeal of the Director's decision with the Secretaries of Commerce and the Interior. (Letter appealing denial of PIC, Pub. Doc. No. 12.) The Secretaries affirmed the Director's decision denying the issuance of the PIC. Timex filed this action contesting that decision. Jurisdiction is proper under 28 U.S.C. § 1581(i) (1994).

## DISCUSSION

Timex argues "that the plain language of [Section 110(h)(i) ] simply directs the Secretaries to *verify* the wages paid by Timex to its employees in the Virgin Islands in 1995 and to *issue* to Timex not later than March 1, 1996 a certificate for the applicable amount." (Pl.'s Mot. for J. Upon Agency R. at 8.) Timex claims the Secretaries are given no discretion under the statutory provision, and that once wages are verified, a PIC must be given. Plaintiff contends that the prerequisite established by the Secretaries—that the recipient firm must actually be a watch producer in the year the PIC is issued—creates a substantive burden that Congress did not envision and for which the statute does not provide. The court disagrees.

■■■ Section 110(h)(i) provides, in relevant part, that the Secretaries shall "issue to each *producer* . . . a[PIC] for the applicable amount." HTSUS, § XVIII, ch. 91, Additional Note 5, para. (h)(i)(B) (Supp. I 1995) (emphasis added). In reviewing the Secretaries' construction of the statute, the court must first consider "whether Congress has directly spoken to the precise question at issue." *Chevron v. Natural Resources De-*

*fense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). The statute does not define the term "producer," and does not speak directly to the question as to whether a potential PIC recipient must be a current producer in the year in which the PIC is actually issued. In such a situation, "the court does not simply impose its own construction on the statute; ... the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. "To survive judicial scrutiny, an agency's construction need not be the *only* reasonable interpretation or even the *most* reasonable interpretation. Rather, a court must defer to an agency's reasonable interpretation of a statute even if the court might have preferred another." *Koyo Seiko Co., Ltd. v. United States*, 36 F.3d 1565, 1570 (Fed.Cir.1994) (citation omitted).

■ When Congress leaves a gap for an agency to fill, an administrative agency is empowered to "elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 844, 104 S.Ct. at 2782. The HTSUS grants the Secretaries the authority to issue various regulations. It reads, in relevant part: "(ij) the Secretaries are authorized to issue such regulations, not inconsistent with the provisions of this note, as they determine necessary to carry out their respective duties under this note. Such regulations shall include minimum assembly requirements." HTSUS, § XVIII, ch. 91, Additional Note 5, para. (ij) (Supp. I 1995). In reviewing such regulations, the court is further guided by the principle that an agency's "interpretation of its own regulations implementing 'the statutes it administers' is entitled to 'substantial weight.'" *Asociacion Colombiana de Exportadores de Flores v. United States*, 903 F.2d 1555, 1559 (Fed.Cir.1990) (quoting *Floral Trade Council v. United States*, 888 F.2d 1366, 1368 (Fed.Cir.1989)). "When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order. '[T]he administrative interpretation ... becomes ... controlling ... unless it is plainly erroneous or inconsistent with the regulation.'" *Id.* at 1559–60 (quoting *Udall v. Tallman*, 380 U.S.

1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965)).

■ The relevant implementing regulations define "producer" as "[A] duty-exemption holder which has maintained its eligibility for further allocations by complying with these regulations." 15 C.F.R. § 303.2(6) (1995). The term "duty-exemption" is defined as "the authorization of duty-free entry of a specified number of watches and watch movements into the Customs Territory of the United States." 15 C.F.R. § 303.2(9) (1995). Therefore, a producer is, pursuant to the regulations just described, a duty-exemption holder presently authorized to import a specified number of watches and watch movements duty-free into the U.S., which has complied with all regulations, including completion of an application for an annual allocation. The Secretaries have thus interpreted the regulatory definition of the term "producer" to mean a producer in the year for which the production incentive certificate applies.

Indeed, the very first implementing regulation of Section 110(h)(i) issued in 1983 specifically provided that:

> Certificates ... shall be issued as soon as possible after February 1, 1983 ... upon receipt of the producer's certification that it intends and shall be able to sustain operations beyond calendar year 1983.

15 C.F.R. pt. 303, app. § 11(b)(1) (1984). In other words, the first regulations implementing Section 110(h)(i) specifically required that potential PIC recipients demonstrate continued operational viability. However, it must be noted that in 1985, the Secretaries eliminated the requirement that watch producers submit certifications that they would sustain operations beyond the calendar year in which the PIC was to be issued. As the Secretaries explained:

> Section 303.12(a)(1) requires producers to certify that they intend and shall be able to continue operations beyond the current calendar year prior to issuance of their production incentive certificates. When we adopted this requirement in 1983 we were concerned that producers might use the certificates but nevertheless cease operations, i.e., take advantage of the incentive without fulfilling its purpose. In our

judgment, the additional incentives have been effective and there is no longer any reason for this transitional safeguard.

Proposed Rule, Watch Duty–Exemption Program, 50 Fed.Reg. 29,232, 29,232 (1985).

Although the administrative procedure of filing a certificate stating that production would be continued was eliminated in 1985, the Secretaries have nevertheless interpreted subsequent regulations as retaining the substantive requirement that the potential PIC recipient must remain a producer in the year in which the PIC is to be issued. (Secretaries' Decision of Jan. 25, 1996, Pub. Doc. 13, at 3–4.) The Secretaries argued the legislative history of the PIC legislation reveals that the incentive mechanisms were intended to encourage companies to continue their Virgin Islands operations. The Secretaries further argue their requirement that a company only be issued a PIC in a particular year if it intends to continue operating in that year is consistent with this legislative history. *Id.* at 4–6 (quoting *Miscellaneous Tariff and Trade Bills: Hearings Before the Subcommittee on Trade of the House Committee on Ways and Means,* 97th Cong. 45 (1982) (statement of Honorable Ron de Lugo, Congr. Rep. V.I.) (noting "[t]o provide the necessary stimulus to produce quartz analog watches in the Virgin Islands, my bill would cause the issuance to territorial assemblers of [PICs] . . . .") and H.R.Rep. No. 97–837, at 38 (1982) (noting the PIC legislation is "designed to encourage production of watches in the insular possessions of the United States")).

## CONCLUSION

Given the relevant standard of review, the court finds that the Secretaries' statutory and regulatory interpretation of the term "producer" is reasonable. The decision to deny Timex a PIC logically follows from the Secretaries' enforcement of their regulations. Timex ceased operations by the end of 1995. Therefore, as it was no longer producing in the insular possession in 1996, Timex did not maintain its eligibility for a duty-exemption allocation in 1996. Timex thus did not qualify as a producer entitled to a PIC in 1996. The Secretaries decision to affirm the Di-

rector's denial of Timex' request for a PIC will therefore be sustained.

## JUDGMENT ORDER

This action having been submitted for a decision and the court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that Plaintiff's Motion upon the Agency Record is denied; and it is further

**ORDERED** that the decision of the Secretaries of Commerce and of the Interior is sustained.